UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

RICHARD BROOKS, )
)
       Plaintiff, )
)
vs. ) Cause No. 3:07-CV-0278 PS
)
WILLIAM WILSON, *et al.*, )
)
       Defendants. )

## OPINION AND ORDER

    Richard Brooks, a pro se prisoner, filed this case pursuant to 42 U.S.C. § 1983, alleging violations of his federally protected rights while he was confined at the Westville Correctional Center. I screened the complaint pursuant to 28 U.S.C. § 1915A(a), granted Mr. Brooks leave to proceed against correctional officers Gary Runde,[1] Thomas Carter, and Vernon Stinson for damages in their personal capacities on his Eighth Amendment claim that they used excessive force against him, and pursuant to 28 U.S.C. § 1915A(b)(1) dismissed all other claims and defendants.

    The facts are disputed. According to Brooks, he has a phobia about being around dogs, and on December 13, 2006, he protested being taken into a dormitory where dogs were present. He alleges that in the process of being taken to the dorm, the defendants used "excessive physical force constituting the unnecessary and wanton infliction of pain" even though he did not resist and had done nothing that would require the use of force. (Complaint at p. 10).[2] In his grievance, which he attaches to his complaint, Brooks asserts that while escorting him out of the dining hall,

---

[1] The complaint names this defendant as Rundy, but the defendants have advised the court that his correct name is Runde.

[2] The plaintiff numbered the first page of his complaint as page 6, and numbered his complaint and attachments as pages 6 through 24.

Officers Runde and Carter twisted his arm violently and handcuffed him. Then they shoved him so hard that it caused him to fall to the ground. They then picked him up and slammed him up against the wall. He also states in his grievance that Officer Stinson assisted defendants Runde and Carter in these activities. (Complaint at p. 15).

The defendants move for summary judgment which is proper only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). To establish a genuine issue of fact, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). No genuine issue for trial exists "where the record as a whole could not lead a rational trier of fact to find for the nonmoving party." *Juarez v. Ameritech Mobile Commc'ns, Inc.*, 957 F.2d 317, 322 (7th Cir. 1992) (internal quotations omitted). But in making a summary judgment determination, the Court must draw every reasonable inference from the record in the light most favorable to the non-moving party.

A violation of the Eighth Amendment's cruel and unusual punishments clause consists of two elements: (1) objectively, whether the injury is sufficiently serious to deprive the prisoner of the minimal civilized measure of life's necessities, and (2) subjectively, whether the prison official's actual state of mind was one of "deliberate indifference" to the deprivation. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). A correctional officer's use of force against an inmate may give rise to an Eighth Amendment claim. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992); *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986). But "that is not to say that every malevolent touch by a prison guard gives rise to a federal cause of action." *Hudson v. McMillian*, 503 U.S. at 10, *quoting Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.

1973). In evaluating whether prison officials violated the Eighth Amendment, a court considers factors such as the need for the application of force, the relationship between the need and the amount of force used, and the extent of injury inflicted. *Whitley v. Albers*, 475 U.S. at 321-322. The "core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. at 7.

In support of their motion for summary judgment, the defendants submit the declarations of defendants Carter and Stinson, in which they state that they and Officer Runde were ordered to move Brooks from the dining hall to a particular dormitory. According to these declarations, Officer Runde placed Brooks in restraints using the minimum necessary force. Brooks complained that he was afraid of dogs and began yelling that he would not go onto the range. They entered the range and ordered Brooks to turn around so the restraints could be removed; Brooks refused and began to physically resist by pulling away. The officers ordered Brooks to stop resisting, and when he calmed down they removed his restraints. Officer Stinson states that Brooks showed no signs of injury and did not complain of any injury.

Brooks tells a vastly different story. In a declaration submitted under penalty of perjury, Brooks swears that he told the officers he was afraid of dogs and afraid to go into the dormitory, where he knew dogs were present. He states that "without warning, Officers Runde and Carter took hold of me, twisted my arm violently and handcuffed me, causing me to yell in pain." (Brooks Declaration ¶ 7). He states that "Officers Carter and Runde shoved me with force into the sally-port hallway of P-1 dorm where Officer Vernon Stinson was waiting. Officer Stinson 'twisted my arms and pushed me in my chest' all without provocation." (Brooks Declaration ¶ 10). According to Brooks, the officers took him into the dorm and immediately hauled him towards the

dog hallway and away from the camera. (Brooks Declaration ¶ 12). Here's what Brooks says happened next: "Without provocation I was then shoved so hard and violently that I could not retain my balance after hitting the hallway wall and fell to the floor." (Brooks Declaration ¶ 12). The officers then "picked me up by my arms and slammed me repeatedly into . . . hallway wall without provocation." (Brooks Declaration ¶ 13).

Brooks states that he sustained injuries which he showed to Officer Henderson. She documented these injuries in the general dorm daily log as follows: "Redness (Left) wrist (Right) wrist (right) knee from slamming aggressive while handcuff[ed]." (Brooks Declaration ¶ 16). Brooks states that "the next day I could feel the extent of the injuries which were sprained and bruised wrists, bruises on knee, a lumped forehead, pain, emotional distress, and nightmares of which I still currently receive psych-therapy for." (Brooks Declaration ¶ 17). Brooks also submits a copy of the dormitory's daily log, conforming the entry described in paragraph sixteen of his declaration.

Brooks has two other witnesses on his side. In a sworn statement, inmate Briant Busby says that he witnessed "Offender Richard Brooks being slammed against the wall by officers." (DE # Exhibit C). Ricarino McDowell states that he "approached the hallway and saw two officers picking Brooks up off the floor and then slam him to the wall repeatedly." (DE # Exhibit D).

In their memorandum of law in support of their motion for summary judgment, the defendants assert that "Officer Stinson was not even involved in escorting Brooks to P dormitory . . . [he] . . . merely observed Officers Runde and Carter bring Brooks into P dormitory . . . ." (DE #47 at p. 2). Defendants Runde and Carter assert that Mr. Brooks physically resisted by pulling away, and that they only used the force necessary to restrain him.

As the nonmoving party, the court must accept the version of events stated in the sworn statements submitted by Mr. Brooks. Accepting Brooks' evidence as true, it suggests that he was verbally, but not physically, resistant. Moreover, even had he physically resisted, a reasonable factfinder could conclude that twisting his arm violently without warning and slamming him repeatedly against the wall exceeded the minimum force necessary to restrain Brooks, particularly when the defendants contend, in their own words, that he only resisted them "by pulling away." Finally, Brooks states unequivocally under oath that Officer Carter was physically involved in the incident. Since there are disputed issues of material fact, summary judgment is not appropriate.

The defendants argue, alternatively, that they are entitled to judgment based on qualified immunity. In *Saucier v. Katz*, 533 U.S. 194, 201 (2001) the Supreme Court established a rigid two-part test in determining if an officer is entitled to qualified immunity. First, courts had to examine whether, taken in the light most favorable to the plaintiff, the facts showed the officer's conduct violated a constitutional right. Second, courts had to determine whether the law was clearly established as of the time the officer engaged in the questioned action. *Id.* Courts considering claims of qualified immunity had to follow this two step analysis in the order prescribed by the Supreme Court in *Saucier*. But just a few weeks ago the Supreme Court's jettisoned this approach in *Pearson v. Callahan*, 129 S. Ct. 808 (2009). In *Pearson* the unanimous Court held that the order of the analysis laid out in *Saucier* "should not be regarded as mandatory . . ." *Id*. at 818. Instead, it allowed lower courts to use their discretion to skip to the second question and avoid the constitutional decision.

This recent change in the law of qualified immunity is immaterial in this case. As the court has already noted, when reviewing a summary judgment motion, it must accept the nonmoving party's version of events as true, and "extract all reasonable inferences from the evidence in the light most

favorable to the nonmoving party." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. at 586. That is also true when reviewing claims of qualified immunity. *Brosseau v. Haugen,* 543 U.S. 194, 197 (2004); *Knox v. McGinnis*, 998 F.2d 1405, 1409 (7th Cir. 1993). Use of the amount of force described by Brooks on an inmate who was not resisting in 2007 would clearly violate established constitutional rights of which a reasonable person would have known. *Hudson v. McMillian*, 503 U.S. at 6-7. So accepting Brooks' version of events as true and giving him the inferences to which he is entitled, the defendants' actions would not be objectively reasonable, and would violate clearly established rights of which a reasonable person would have been aware.

## CONCLUSION

For the foregoing reasons, the court **DENIES** the defendants' motion for summary judgment (DE #46) and **GRANTS** the plaintiff's motion in opposition to the defendants' motion for summary judgment (DE #51). Because the court denied the motion for summary judgment based on the parties' original submissions, the court **DENIES** the plaintiff's request for leave to amend his statement of genuine issues in dispute (DE #54) as moot.

This matter is now set for a telephonic status hearing on March 24, 2009 at 1:00 p.m. (Hammond Time) for the purpose of setting a trial date and final pretrial conference date.

**SO ORDERED.**

**ENTERED**: February 17, 2009

                                                /s Philip P. Simon
                                                Philip P. Simon, Judge
                                                United States District Court